S. LANE TUCKER
United States Attorney

RYAN TANSEY
Assistant United States Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: ryan.tansey@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| UNITED STATES OF AMERICA, | ) | No. 4:21-cr-00011-RRB-SAO |
|---|---|---|
| Plaintiff, | ) ) ) | |
| vs. | ) ) | **PLEA AGREEMENT** |
| RYAN DALBEC, | ) ) | |
| Defendant. | ) ) ) | |

**Unless the parties jointly inform the Court in writing of any additional agreements, this document in its entirety contains the terms of the plea agreement between the defendant and the United States.  This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.**

## I.     SUMMARY OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11

### A.     Summary of Agreement

The defendant agrees to plead guilty to the following count(s) of the Indictment in this case: Count 1: Conspiracy, in violation of 18 U.S.C. § 371; and Count 2: Bribery of a Public Official, in violation of 18 U.S.C. § 201(b)(1)(A) and (C).  The parties agree to jointly recommend a sentence of 42 months' imprisonment, a criminal fine of $172,500, and restitution of $16,296.80. The United States agrees not to prosecute the defendant further for any other offense related to the event(s) that resulted in the charge(s) contained in the Indictment. After the Court accepts the plea agreement and imposes the sentence, the United States agrees to dismiss the remaining count(s) (3-5, and 18) as to the defendant.

The defendant will waive all rights to appeal the conviction(s) and sentence imposed under this agreement.  The defendant will also waive all rights to collaterally attack the conviction(s) and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea(s). This plea agreement is part of a "package" disposition as set forth in Section V(F) below.

### B.     Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(A) and (B) will control this plea agreement.  Thus, the defendant may not withdraw from this agreement or the guilty plea(s) if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## II. CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE

### A. Charges

**1. The defendant agrees to plead guilty to the following count(s) of the Indictment:**

Count 1:  Conspiracy, a violation of 18 U.S.C. § 371;

Count 2:  Bribery of a Public Official, a violation of 18 U.S.C. § 201(b)(1)(A) and (C).

### B. Elements

The elements of the charge(s) in Count 1 to which the defendant is pleading guilty are as follows:

**1.** Beginning on or about March 2019 and ending on or about November 2019, there was an agreement between two or more persons to commit bribery;

**2.** The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose; and

**3.** One of the members of the conspiracy performed at least one overt act on or after March 2019 for the purpose of carrying out the conspiracy.

The elements of the charge(s) in Count 2 to which the defendant is pleading guilty are as follows:

1.  The defendant gave, offered, or promised a thing of value, specifically money, to Brian Lowell Nash II ("Nash");

2.  The defendant acted corruptly, that is, with the intent to influence an official act by Nash or to induce Nash to do or omit to do any act in violation of his lawful duty; and

3.  Nash was a public official.

C.  **Factual Basis**

The defendant admits the truth of the allegations in Counts 1; and 2 of the Indictment and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty plea(s) and for the imposition of the sentence:

Eielson Air Force Base ("Eielson AFB") is a United States Air Force facility located 26 miles southeast of Fairbanks, Alaska. Joint Base Elmendorf-Richardson ("JBER") is a United States military facility located in Anchorage, Alaska.

An Independent Government Cost Estimate ("IGCE") is an internal estimate, created by the government, to estimate a contract's potential costs. The IGCE was confidential and not disclosed to potential bidders because it would put the government at a competitive disadvantage when negotiating the contract. Further, the defendant knew that if only one bidder obtained the IGCE, that bidder would gain an unfair advantage over competing bidders and, as a result, would be more likely to win the contract.

The defendant, RYAN DALBEC ("DALBEC"), was the manager of Best Choice Construction LLC ("Best Choice"), which was a limited liability company organized and

existing under the laws of North Dakota, with its principal place of business in Fargo, North Dakota. Through Best Choice, DALBEC submitted bids for and was awarded U.S. military contracts in Alaska, including contracts to perform work at Eielson AFB and JBER.

Raihana Nadem, a/k/a Raihana Dalbec ("Nadem") is married to DALBEC and was the owner and registered agent of Best Choice. Nadem assisted DALBEC in the daily management of Best Choice, including with the preparation and submission of bids for U.S. military contracts in Alaska, including contracts at Eielson AFB and JBER.

Brian Lowell Nash II ("Nash"), was an enlisted E-4 Senior Airman Contract Specialist in the U.S. Air Force. Nash was a member of the 673rd Contracting Squadron assigned to JBER. The defendant knew that as part of Nash's regular duties as a Contract Specialist he was authorized to award and administer contracts up to $250,000, and had access to non-public information, such as competitor bid information and IGCEs, on other Alaska U.S. Military contracts that exceeded $250,000. In his role as an E-4 Senior Airman Contract Specialist in the U.S. Air Force, Nash was a public official within the meaning of 18 U.S.C. § 201. DALBEC knew that one of Nash's official lawful duties was to keep confidential and not disseminate or disclose contractor bid or proposal information, including the IGCE, to any outside contractor.

//

//

//

<u>Contracts</u>

On or about the dates set forth in paragraphs 10 through 14 of the Indictment,

Eielson AFB and JBER solicited and, in most instances awarded, multiple government

contracts to Best Choice, as set forth below in Column A.

| "A" – CONTRACT | "B" – MILITARY BASE | "C" – AWARD AMOUNT |
|---|---|---|
| Asbestos Abatement Contract 1 | JBER | $725,000 |
| Asbestos Abatement Contract 2 | JBER | $467,000 |
| Eielson Roof Repair Contract | Eielson AFB | Cancelled |
| Eielson F-35 Building Contract | Eielson AFB | $6,850,000 |
| Nike Contract | JBER | $210,000 |

<u>Conspiracy</u>

Beginning in or about March 2019, and continuing until in or about November

2019, Nash had a bribery agreement with the defendant DALBEC, whereby Nash

provided DALBEC with confidential, non-public bidding information concerning U.S.

military contracts in Alaska, including the IGCE and competitor bid amounts, and in

return, DALBEC and Nadem gave and promised Nash cash and other things of value,

both as upfront payments and as a percentage of the total value of contracts won using the

information that Nash provided.

The conspiracy operated as follows:

- DALBEC would give, offer, and promise bribes in the form of cash, a percentage of the contract value, and other things of value to Nash, which Nash would receive and accept and agree to receive and accept;

- In return for these bribes and promised bribe payments, Nash would provide DALBEC and Nadem with internal, proprietary bid or proposal information, including the IGCE and other confidential, non-public bidding information concerning U.S. military contracts in Alaska in violation of Nash's official lawful duties;

- Using the information Nash provided, DALBEC and Nadem would bid on and win U.S. military contracts in Alaska;

- Nash, DALBEC and Nadem, took steps to conceal their corrupt bribery relationship. Specifically, DALBEC and Nadem communicated with Nash using his personal email account, Nash used a "burner" phone to communicate with DALBEC and Nadem, and Nash, DALBEC and Nadem wired bribe money to third party bank accounts and individuals in amounts intended to conceal the funds and avoid transaction reporting requirements.

To accomplish the objects of the conspiracy, Nash, DALBEC, and Nadem committed the following overt acts, among others:

- In or about March 2019, Nash and DALBEC met in Alaska and agreed that Nash would provide DALBEC and Nadem with confidential, non-public bidding information about U.S. military contracts in Alaska, such

as the IGCE and competitors' bidding information, in exchange for money and other things of value from DALBEC and Nadem.

– On or about March 19, 2019, April 4, 2019, and April 8, 2019, DALBEC paid Nash a total of $45,000 in cash in exchange for Nash providing DALBEC and Nadem with confidential, non-public information regarding bidding on Asbestos Abatement Contract 1 and Asbestos Abatement Contract 2.

– On or about June 19, 2019, DALBEC wired $7,000 into the bank account of Nash's relative to disguise and conceal the source and control of the bribe payment.

– On or about June 27, 2019, DALBEC and Nadem offered to pay Nash $50,000 in exchange for confidential, non-public bidding information related to the Eielson Roof Repair Contract, if Best Choice was awarded the contract.

– On or about June 27, 2019, Nash sent a text message to DALBEC regarding the Eielson Roof Repair Solicitation, stating that "7% is the price, my contact at eielson wants 2%.  All i can give you is the gov estimate bec this is a sealed bid solicitation but it should be very accurate as this is comparable to other projects they have done." DALBEC accepted Nash's terms by replying, "[w]hat's the government estimate [IGCE]."

- On or about June 27, 2019, Nadem sent a text message to Nash agreeing that she would pay Nash "50k upon award [of the Eielson Roof Repair Solicitation] you have my word."

- On or about June 29, 2019, DALBEC, Nadem and Nash agreed that Nash would provide DALBEC and Nadem with confidential, non-public information regarding the bidding for the Eielson F-35 Building Contract. In exchange, DALBEC and Nadem agreed to pay Nash $1,000 cash for the information, plus 5% of the contract value (approximately $355,000), $50,000 of which was to be paid upon award if Best Choice was awarded the contract. Nash and Nadem exchanged the following text messages concerning this agreement:

  > Nash: 5% is the price. 50k on award. I can do biweekly payments for the rest. Fair?

  > Nadem: Agreed. What amount we should bid

  > Nash: 7.1M just make sure you cover all aspects of the ktr [contract]. This will be huge for future kts [contracts] and credibility as well

- On or about July 17, 2019, Nash sent a text message to Nadem stating "FA5004-19-B-A014 /// $1.08M IGE," by which Nash was informing Nadem that $1.08 million was the IGCE for the Eielson Roof Repair Solicitation. Nadem replied "perfect let me check." Later, Nash text messaged Nadem: "As per our new agreement, $1k and 5% if you get

award. Also, i would always bid a bit under IGE. They wont admit it but they usually get their IGE from the company they want to do it."

– On July 18, 2019, DALBEC, Nadem and Nash exchanged the following text messages regarding their bribery arrangement for the Eielson F-35 Building Contract:

> DALBEC: 1000 if we lose for information and 5% if we win as a partnership so you get paid either way it's in your benefit

> Nash: Correct, but when do I get the 1000? It's a lot of risk on my end and my "contacts" are asking me for $ for just the info which is why I brought it up to begin with.

> Nadem: Of course we will take care of that tomorrow the first thing

> Nash: Thank you, Ill work to come up with more opportunities that I can guarantee rather than just give the IGCE

> Nadem: Highly appreciated

– On July 18, 2019, Nash sent DALBEC a text message stating: "As with the agreement with your wife that is 2 projects IGEs i have gave you. How am i going to get paid the $1,000 for each of their information? Can you wire to the same acc[ount] as before? I will see what other info I can squander. The more you help me, i will help you." With this message, Nash was describing the quid pro quo between himself, DALBEC and Nadem, and specifically requesting the agreed-upon $1,000 in up-front bribe payments in exchange for the IGCEs Nash provided to DALBEC and Nadem on multiple contracts.

- On or about July 19, 2019, DALBEC and Nadem paid Nash $1,000 in exchange for the non-public information Nash provided regarding the Eielson F-35 Building Contract FA500420C0003.

- On August 22, 2019, Nash provided DALBEC and Nadem with confidential, non-public bidding information regarding the Nike Contract.

- On or about September 17, 2019, DALBEC met Nash and paid him $1,000 cash in exchange for the non-public information that Nash provided regarding the Nike Contract. DALBEC and Nash also discussed how DALBEC and Nadem would pay Nash the previously agreed upon $355,000 in bribe payments for the information Nash provided, which had helped Best Choice win the F-35 Building Contract. DALBEC expressed concern that "you can't hide" large amounts of money, "even in transfers." Instead, DALBEC proposed that Best Choice "can purchase bonds as an asset for itself" and then could "gift the bonds" to Nash. DALBEC later stated in reference to the bribe payments: "it's got to be done right. Otherwise, criminal offense."

- On October 18, 2019, Nash sent the following group text message to DALBEC and Nadem: "Rihanna & Ryan, Hey the 10k still hasn't hit…account yet and I need it before I deploy for family and stuff. Please call ASAP." This was a reference to the $10,000 bribe payment that DALBEC and Nadem promised Nash for information that Nash

provided regarding the Nike Contract. Approximately 15-minutes later, Nash called Nadem. Nadem answered and said, "I was going to text you back, but you called, good you called so uh I will get on it right now and then today we're going to take care of it." Nash asked Nadem when to expect the $10,000 bribe payment. Nadem replied, stating that DALBEC will get on it "likely today" and that "I will text you whenever it's going to be available." Nash then asked if he should expect two payments of $5,000 each, and Nadem asked "Ryan, are we doing two payments baby?" Nadem then followed up, saying that two payments were better, and that "I will do both today to get this done." After Nash asked if Nadem needed the account information for payment, Nadem replied that she had the account information but DABLEC was handling work related problems. Nash offered to send Nadem the account information, to which Nadem replied, "perfect, thank you so much...."

– After the call, Nash texted Nadem the information for a bank account opened in the name of a third party named "Mark Watkins." Nadem replied "thank you so much."

– On or about October 21, 2019, Dalbec, aided by Nadem, paid Nash $9,500 via wire transfer in exchange for the non-public information that Nash provided regarding the Nike Contract. Nash was aware that Nadem structured the payment to avoid federal transaction reporting

the deposit into a third party's bank account in an effort to conceal the payment.

– On or about October 22, 2019, Nash texted DALBEC and Nadem: "Got the money. Thanks guys. Will be in touch about first full week in November. I should be in your area." Nadem replied: "Sure thanks."

In total, on or about the dates set forth below in Column "A," DALBEC corruptly gave, offered, and promised Nash the bribe payments set forth below in Column "B" intending to influence Nash in the performance of his official acts and to induce Nash to violate his official duties by providing DALBEC and Nadem with confidential, non-public information, such as the IGCE and competitor bidding information regarding the U.S. military contracts set forth in Column "C."

| "A" – DATE | "B" – ITEMS OF VALUE | "C" – CONTRACT |
|---|---|---|
| March – April 2019 | $45,000 | Asbestos Abatement Contracts 1 and 2 |
| June 2019 | $50,000 | Eielson Roof Repair Contract |
| July 2019 | $356,000 | Eielson F-35 Building Contract |
| August – September 2019 | $10,500 | Nike Contract |

Additionally, on or about the dates set forth below in Column "B," Nash, DALBEC and Nadem (identified respectively in Column "A") made the below series of cash or bank transactions set forth in Column "C" designed and intended to conceal the true nature, source, ownership, and control of the funds being transacted and to avoid transaction reporting requirements. Nash and DALBEC each knew that the property

involved in the below financial transactions represented the proceeds of unlawful activity,

specifically, bribery.

| "A" – DEFENDANT | "B" – DATE | "C" – FINANCIAL TRANSACTION |
|---|---|---|
| Nash | March 19, 2019 | The transfer of $2,000 cash from Nash to his relative K.N. via Walmart MoneyGram |
| Nash | March 20, 2019 | The transfer of $800 from Nash's relative K.N. to Nash's bank account via Zelle Transfer |
| Nash | March 22, 2019 | The transfer of $2,500 cash from Nash to his relative K.N. via Walmart MoneyGram |
| Nash | March 23, 2019 | The transfer of $2,000 from Nash's relative K.N. to Nash's bank account via Zelle Transfer |
| Nash | March 24, 2019 | The transfer of $250 from Nash's relative K.N. to Nash's bank account via Zelle Transfer |
| Nash | April 5, 2019 | The transfer of $2,500 cash from Nash to his relative K.N. via Walmart MoneyGram |
| Nash | April 6, 2019 | The transfer of $2,000 from Nash's relative K.N. to Nash's bank account via Zelle Transfer |
| Nash | April 7, 2019 | The transfer of $400 from Nash's relative K.N. to Nash's bank account via Zelle Transfer |
| DALBEC | June 19, 2019 | The transfer of $7,000 from DALBEC's bank account into Nash's relative M.W.'s bank account via Wire Transfer |
| Nash | June 19, 2019 | The transfer of $2,000 from Nash's relative M.W.'s bank account into Nash's bank account via Zelle Transfer |
| Nash | June 20, 2019 | The transfer of $2,000 from Nash's relative M.W.'s bank account into Nash's bank account via Zelle Transfer |
| Nash | June 22, 2019 | The transfer of $2,000 from Nash's relative M.W.'s bank account into Nash's bank account via Zelle Transfer |

| | | |
|---|---|---|
| Nash | July 23, 2019 | The transfer of $1,000 from Nash's relative M.W.'s bank account into Nash's bank account via Zelle Transfer |
| Nash | July 24, 2019 | The transfer of $900 from Nash's relative M.W.'s bank account into Nash's bank account Zelle Transfer |
| Nash | July 26, 2019 | The transfer of $1,000 from Nash's relative M.W.'s bank account into Nash's bank account via Zelle Transfer |
| Nash | September 9, 2019 | The transfer of $1,000 from Nash's relative M.W.'s bank account into Nash's bank account via Zelle Transfer |
| Nadem DALBEC | October 21, 2019 | The transfer of $9,500 into a third party bank account designated by Nash via Wire Transfer |

**D.      Statutory Penalties and Other Matters Affecting Sentence**

**1.      Statutory Penalties**

The maximum statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea(s), are as follows:

Count 1: 18 U.S.C. § 371 (Conspiracy)

    1) 5 years' imprisonment;

    2) a $250,000 fine;

    3) a $100 special assessment; and

    4) three years of supervised release.

Count 2: 18 U.S.C. § 201(b)(1)(A) and (C) (Bribery of a Public Official)

    1) 15 years' imprisonment;

2) $250,000 fine or three times the monetary equivalent of the thing of value, whichever is greater;

3) 3 years' supervised release; and

4) $100 special assessment.

## 2. Other Matters Affecting Sentence

### a. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence: 1) pursuant to Comment 7 of U.S.S.G. § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term; 2) pursuant to 18 U.S.C.§ 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release; 4) the Court may order the defendant to pay restitution pursuant to the 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1, and if 18 U.S.C. § 3663A (mandatory restitution for certain crimes) applies, the Court shall order the defendant to pay restitution.

### b. Payment of Special Assessment

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence. All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

### c.      Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury.  If applicable, any defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, be denied citizenship, and not permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General.  In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including but not limited to possible denaturalization.

### E.      Restitution

The defendant agrees to pay $16,296.80 in restitution to Eielson Air Force Base. The defendant acknowledges that the conduct described in Section II.C. encompasses relevant conduct beyond the counts of conviction for purposes of restitution. The Court will have sole discretion ultimately to determine if the defendant has liability for any restitution.

### F.      Fine

The parties agree to jointly recommend a criminal fine of $172,500, which shall be paid in full upon entry of the judgment in this case. The defendant may identify and liquidate assets to satisfy criminal and civil liabilities arising from the conduct in this case. The defendant will deposit proceeds from such liquidated assets up to an amount of

$200,000 into a designated escrow account (to be specified at the change of plea hearing) and use those proceeds solely for the satisfaction of criminal and civil liabilities until 100% of those liabilities are satisfied. The defendant certifies that any proceeds deposited into the escrow account will free and clear of any superior liens, security interests, or other encumbrances.

Defendant understands and acknowledges that the United States is relying upon the defendant's truthful asset disclosure and cooperation in entering into this plea agreement. If the defendant fails to cooperate or is untruthful in this regard, the United States may declare a material breach of this plea agreement or may recommend against an adjustment for Acceptance of Responsibility.

### G.    Forfeiture

Defendant admits the Criminal Forfeiture Allegation in its entirety, and that the described property is subject to forfeiture to the United States in accordance with 18 U.S.C. § 981(a)(1)(c). The defendant affirms that there were no profits earned by Best Choice for performing the government contracts described in the Indictment.

Defendant understands and acknowledges that the United States is relying upon the defendant's truthful asset forfeiture disclosure and cooperation in entering into this plea agreement. If the defendant fails to cooperate or is untruthful in this regard, the United States may declare a material breach of this plea agreement or may recommend against an adjustment for Acceptance of Responsibility.

III.   **ADVISORY UNITED STATES SENTENCING GUIDELINES, GUIDELINE APPLICATION AGREEMENTS, SENTENCING RECOMMENDATIONS**

A.     **Advisory United States Sentencing Guidelines**

The Court must consult the advisory United States Sentencing Commission Guidelines [U.S.S.G.] as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose.  The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offense(s) to which the defendant is pleading guilty.  The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G.

B.     **Guideline Application Agreements**

The parties have no agreements on any guideline applications unless set forth below in this section.

1.     **Acceptance of Responsibility**

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility.  If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility, the United States will not make or, if already made, will withdraw this recommendation and motion.

The parties also agree to make the following recommendations under the U.S. Sentencing Guidelines:

- Base Offense Level: U.S.S.G. § 2C1.1(a)(2)…………………………………12

- The offense involved more than one bribe: U.S.S.G. § 2C1.1(b)(1)…......+2

- The value of anything obtained or to be obtained by a public official was more than $250,000, but less than $550,000: U.S.S.G. § 2C1.1(b)(2)…………………………………………………………...…...+12

## C.    Sentencing Recommendations

The United States Probation Office will prepare the defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G.  Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the guideline sentence range calculation the U.S.P.O. recommends, as well as present evidence in support of their respective sentencing arguments.

The parties agree to jointly recommend a sentence of 42 months' imprisonment, a criminal fine of $172,500, and restitution of $16,296.8..  The parties are otherwise free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on the stipulated facts set forth in Section II.C, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory U.S.S.G., and the sentencing factors set forth in 18 U.S.C. § 3553.

## IV.    ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty plea(s) and the Court's acceptance of the defendant's plea(s) and the terms of this agreement, the United States agrees that it will

not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charges brought in the Indictment in this case and the defendant's admissions set forth in Section II.C. After the Court accepts the plea agreement and imposes the sentence, the United States agrees to dismiss the remaining count(s) (3-5, and 18) as to the defendant.

Provided, however, if the defendant's guilty plea(s) or sentence is/are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated as well as for perjury and false statements.  The defendant hereby agrees that he/she waives any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## V.     WAIVER OF TRIAL RIGHTS, APPELLATE RIGHTS, COLLATERAL ATTACK RIGHTS, CLAIM FOR ATTORNEY FEES AND COSTS, AND RULE 410

### A.     Trial Rights

Being aware of the following, the defendant waives these trial rights:

- – If pleading to an Information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

- – The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial – the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

**B.    Appellate Rights**

The defendant waives the right to appeal the conviction(s) resulting from the entry of guilty plea(s) to the charges set forth in this agreement.  The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties

– as set forth in Section II.D above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes. The defendant understands that this waiver includes, but is not limited to, forfeiture (if applicable), terms or conditions of probation (if applicable) or supervised release, any fines or restitution, and any and all constitutional (or legal) challenges to defendant's conviction(s) and guilty plea[s], including arguments that the statute(s) to which defendant is pleading guilty (is/are) unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea[s] of guilty.

The defendant agrees that the appellate and collateral attack waivers contained within this agreement will apply to any 18 U.S.C. § 3582(c) modifications, as well as the district court's decision to deny any such modification.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement. The government is free to reinstate any dismissed charges, and withdraw any motions for downward departures, or sentences below the mandatory minimum made pursuant to 18 U.S.C. § 3553(e).

### C.    Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting conviction(s) and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the conviction or sentence alleging ineffective assistance of counsel – based

on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea(s).

## D. Claim for Attorney Fees and Costs

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

## E. Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement set forth in Section II.C. The defendant agrees that the statements made by him in signing this agreement shall be deemed usable and admissible against the defendant as stipulations in any hearing, trial or sentencing that may follow. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f), and is effective upon the defendant's in-court admission to the factual basis supporting the plea(s). This provision applies regardless of whether the court accepts this plea agreement.

## F. Package Disposition

The disposition contemplated by this agreement is part of a "package" deal with Raihana Nadem, a/k/a Raihana Dalbec. If either defendant in the package fails to accept, execute, or perform, or breaches any part of their agreement, no defendant can withdraw their guilty plea, but the United States is relieved from and not bound by any terms in any agreements in the package.

## VI.   ADEQUACY OF THE AGREEMENT

Pursuant to Local Criminal Rule 11.2(d)(7) and (8), this plea agreement is appropriate in that it conforms with the sentencing goals that would otherwise be applicable to the defendant's case if the defendant had gone to trial and had been convicted on all counts in the charging instrument.

## VII.   THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT

I, Ryan Dalbec, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my plea(s).  There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement.  If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea(s).

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty.  If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement.  If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this

agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter.  If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement.  I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offense(s) to which I am pleading guilty and my understanding of this plea agreement.  I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly.  I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my plea(s).  I enter into this agreement knowingly and voluntarily.  I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission.  Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea(s).  My attorney and I have discussed all possible defenses to the charge(s) to which I am pleading guilty.  My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction.  My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction.  We have

discussed the statute(s) applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Count 1: Conspiracy, in violation of 18 U.S.C. § 371; and Count 2: Bribery of a Public Official, in violation of 18 U.S.C. § 201(b)(1)(A) and (C) of the Indictment.

DATED: 8/19/22

RYAN DALBEC
Defendant

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charge(s) to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: _8/25/22_                        _____
                                        DAVID BENOWITZ
                                        Attorney for Ryan Dalbec


On behalf of the United States, the following accepts the defendant's offer to plead guilty under the terms of this plea agreement.


DATED: _9/1/2022_                       _____
                                        RYAN D. TANSEY
                                        Assistant U.S. Attorney