S. LANE TUCKER
United States Attorney

RYAN TANSEY
Assistant United States Attorney
Federal Building & U.S. Courthouse
101 12th Avenue, Room 310
Fairbanks, Alaska 99701
Phone: (907) 456-0245
Fax: (907) 456-0577
Email: ryan.tansey@usdoj.gov

Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RYAN DALBEC, | ) | No. 4:21-cr-00011-RRB-SAO |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## GOVERNMENT SENTENCING MEMORANDUM

### SUMMARY OF SENTENCING RECOMMENDATIONS

**TERM OF IMPRISONMENT** ........................................................................ **42-months**

**SUPERVISED RELEASE** ................................................................................**3 years**

**RESTITUTION** ............................................................................... **$16,296.60**

**FINE**.................................................................................................**$172,500**

The United States respectfully recommends that the Court to impose a sentence of 42-months imprisonment, followed by a three-year term of supervised release, a criminal fine of $172,500, and restitution in the amount of $16,296.80. This sentence is consistent with the parties' plea agreement and is sufficient, but not greater than necessary to deter others and punish the defendant for agreeing to pay over $460,000 in bribes to a U.S. government official in return for confidential bidding information on U.S. Department of Defense contracts.

## I. INTRODUCTION

### a. Facts and Procedural History

The facts of this case are set forth at length in the parties' plea agreement and the PSR. *See* Dkts. 144 (Plea Agreement) and 166 (PSR) ¶ 4-15. In short, in 2019, through a series of meetings, text messages and phone calls, the defendant agreed to pay his co-defendant Brian Nash—then a Contract Specialist with the U.S. Airforce—over $460,000 in bribes. In exchange, Nash provided Dalbec with confidential bidding information on over $8,250,000 in U.S. Department of Defense contracts to perform services and construction at Eielson AFB and JBER. Dalbec had paid Nash over $56,000 of the agreed upon bribes before federal investigators intervened and disrupted the scheme. During one of those payments, the FBI recorded Dalbec handing Nash $1,000 cash and discussing ways to launder the remaining proceeds using bonds and other financial instruments.

On September 2, 2022, Dalbec pleaded guilty to one count of conspiracy to commit bribery, in violation of 18 U.S.C. § 371, and one count of bribery of a public official, in violation of 18 U.S.C. § 201(b)(1)(A) and (C).

## II.    SENTENCING CALCULATION

### a.  Statutory Maximum Sentence

The maximum sentence that may be imposed on the defendant for a violation of 18 U.S.C. § 371 is 5 years' imprisonment, a $250,000 fine, three years' supervised release, and a $100 special assessment. The maximum sentence that may be imposed for a violation of 18 U.S.C. § 201(b)(1)(A) and (C), is 15 years' imprisonment, a $250,000 fine or three times the monetary equivalent of the thing of value, 3 years' supervised release, and a $100 special assessment.

### b.  Sentencing Guidelines Calculation

The United States agrees with the Probation Officer's Guidelines calculation of 63 to 78 months imprisonment, in Criminal History Category III.

The United States notes one mistake in the PSR that warrants correction: Paragraph 3a states that "the defendant acquired new federal charges…" while in pretrial release. That sentence should be corrected to read: "the defendant committed new federal and state crimes… while on pretrial release, for which his bail was revoked and he was remanded into custody. No formal charges have been filed arising from these incidents." This conduct is further explained below.

### c. The Probation Officer's Recommended Sentence

The Probation Officer recommends a sentence of 63-months imprisonment, followed by two years of supervised release.

## III. GOVERNMENT'S RECOMMENDATION

The United States believes a significant term of imprisonment is necessary to deter others and punish the defendant for corruptly bribing a government official for confidential bidding information on U.S. Department of Defense contracts throughout Alaska. A sentence of 42-months' imprisonment, followed by a three-year term of supervised release and imposition of the $172,500 fine and $16,296.80 in restitution is a sufficient punishment to accomplish these sentencing goals.

*The Nature, Circumstances, and Seriousness of the Offense*: Defendant's crime involved a serious breach of the public trust. He agreed to pay hundreds of thousands of dollars in bribes to a corrupt federal contracting officer and won millions in government contracts from the confidential information he received in return. This conduct occurred repeatedly over a months-long period and was first initiated by Dalbec. The conduct was premeditated, and Dalbec took active efforts to conceal the misconduct from authorities by utilizing burner phones and helping Nash launder proceeds from the unlawful scheme. Had they not been caught, there is nothing to suggest that Nash or Dalbec would have stopped their corrupt bribery relationship. And based on his criminal history and the brazen way Dalbec initiated the scheme, it is doubtful this was Dalbec's first rodeo. More broadly, this conduct harmed the U.S. government and the competitive bidding process for government

contracts. In a truly competitive environment prospective contractors regularly bid below the Independent Government Cost Estimate (IGCE) to obtain contracts. By obtaining the IGCE and competitor bidding information, Dalbec corrupted the bidding process and created competitive asymmetries that unfairly inured to his benefit. This conduct warrants a significant punishment.

The defendant's commission of new financial crimes while on pretrial release further counsels in favor of a 42-month sentence. This misconduct is detailed in Magistrate Judge Oravec's order revoking Dalbec's bail. *See* Dkt. 108. In short, in early August 2021, Dalbec filed a false police report with the Maricopa County Sheriff's Office (MCSO) in Arizona claiming that a 2017 Ford F450 (the Truck), which Dalbec had previously sold to his former employee, J.S., was stolen. This false report caused law enforcement to seize the Truck from J.S. and return it to Dalbec. In truth, Dalbec knew he had previously sold the truck to J.S. for approximately $51,000, which was confirmed by a signed purchase agreement and bank records. In mid-August, the Arizona Department of Motor Vehicles Office of Inspector General began investigating Dalbec's stolen vehicle claims. After completing their investigation, the OIG referred criminal charges against Dalbec for false statements to law enforcement in Arizona. The Arizona DMV also re-issued the Truck title in J.S.'s name after determining that he was the rightful owner and that Dalbec had made a false report. The purpose of this scheme was to have J.S. pay off the Truck's lien held by Gate City Bank, after which Dalbec falsely reported the Truck as stolen so he could re-assume possession of it unencumbered by the bank's lien.

Additionally, during the same period, Dalbec committed bank fraud by concealing funds from Gate City Bank, which had a security interest in Dalbec's accounts due to his default on nearly a million dollars in loans. On June 9, 2021, Dalbec's Best Choice Construction Account (No. xxx662) at Gate City Bank received an ACH contract payment from the US Army Corps of Engineers in the amount of $76,950, bringing the total amount in this account to $77,255.93. The same day, Dalbec transferred via the internet $77,255 to J.S.'s Gate City Bank Account (No. xxxx169). Dalbec then called J.S. and demanded that J.S. write him a check in the amount of $70,000 from J.S.'s account because Dalbec had to pay bills. According to bank records, Smith wrote the check on June 9, 2021, and it cleared into Dalbec's separate Wells Fargo Bank account on June 10, 2021. J.S. said he did not authorize Dalbec to deposit the initial $77,255 into his account, and Dalbec specifically told J.S. that he transferred the money because Gate City Bank had a garnishment on Dalbec's accounts. These transactions with J.S. essentially exchanged funds in the Gate City Bank account *covered* by the security interest for funds provided by J.S. *not covered* by the security interest, which constitutes Bank Fraud. *See* Dkt. 108 at 7.

Although Dalbec has not been charged with these crimes, the Court can and should consider this brazen conduct in its § 3553 analysis.

*History and Characteristics of the Defendant*: The defendant is a convicted felon whose history demonstrates a pattern of disregard and disrespect for the law beginning at the age of 18. He has four separate convictions for burglary and one for drug distribution between 1996 and 1997, and in 1998 he was convicted of trafficking

cocaine/heroin/methamphetamine. Between 2011 and 2012 he was convicted of another drug offense and multiple DWIs. He also committed multiple probation violations. While much of this conduct is remote in time, the current charges and the defendant's flagrant misconduct while on pretrial release demonstrate that he has not reformed. To the contrary, he merely graduated to more sophisticated and difficult to detect criminal schemes. Indeed, this is further evidenced by a 2014 consumer fraud action filed by the North Dakota Attorney General's Office, which effectively banned Dalbec from conducting contracting business in the state.[1] A lengthy prison sentence of 42-months will hopefully control the defendant in a way that mitigates the serious risks he poses to the public.

*The Need for Adequate Deterrence and Protection of the Public*: The need to appropriately reflect the seriousness of the defendant's offense, afford appropriate deterrence, protect the public, and afford the defendant appropriate rehabilitation similarly dictates a sentence of 42-months' imprisonment. Federal officials have a difficult job protecting the integrity of federal procurement programs from bribery and corruption, and the nature of Dalbec's criminal acts makes this type of offense particularly difficult to detect. Indeed, this conduct likely would have remained undetected were it not for a tip from a Confidential Informant. This dynamic makes general deterrence vitally important to maintaining the integrity of the government procurement process. The proposed

---

[1] *See State of North Dakota Ex Rel. v. Dalbec Property Management, Inc.; and Ryan Dalbec, Individually*, available at: https://attorneygeneral.nd.gov/sites/ag/files/documents/RecentActions/2014-03-18-Dalbec-CD.pdf (last visited Nov. 25, 2022)

sentence here will serve the important goal of warning others of the serious consequences of cheating the system by bribing public officials.

*The Kind of Sentences Available and the Sentencing Range Established by the Sentencing Commission*: The United States' requested sentence is an appropriate sentence and is below the bottom of the applicable Sentencing Guidelines range established by the Sentencing Commission.

*Fine and Restitution*: The Court should impose the agreed upon criminal fine of $172,500, and restitution of $16,296.60, payable to Eielson Air Force Base. The restitution amount represents additional costs incurred to Eielson AFB related to Dalbec's misconduct surrounding the F-35 contract.

## IV.    CONCLUSION

For the reasons stated herein, the United States respectfully asks the Court to sentence the defendant to a term of 42-months' imprisonment, followed by a three-year term of supervised release. The United States also asks the Court to impose the agreed upon criminal fine of $172,500, and restitution in the amount of $16,296.60. This sentence recognizes the seriousness of the defendant's crimes, his history and characteristics, and the important need to deter others from engaging in similar activity.

//

//

//

//

RESPECTFULLY SUBMITTED this 25th day of November 2022, in Fairbanks, Alaska.

S. LANE TUCKER
United States Attorney

s/ Ryan D. Tansey
RYAN D. TANSEY
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2022,
a true and correct copy of the foregoing
was served electronically on the following:

All Counsel of Record

s/ Ryan Tansey
Office of the U.S. Attorney