UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>RYAN DALBEC | 4:21-cr-00011-RRB-SAO-1 |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Ryan Dalbec, by and through counsel, respectfully files this Memorandum in Aid of Sentencing. Mr. Dalbec comes before the Court thoroughly humbled, disappointed with himself and his actions, and utterly remorseful following his entering a plea of guilty to one count of Conspiracy to Commit Bribery, in violation of 18 USC § 371, and one count of Bribery of a Public Official, in violation of 18 USC §§ 201(b)(1)(A) and (C). *See* PSR and Exhibit A.

Mr. Dalbec is forty-four (44) years old and was born in Minnesota. *See* PSR at ¶ 48. He has worked in construction for most of his life and, prior to his arrest, had worked extremely hard to develop a very successful career in the industry as a business owner. In fact, at the time of his arrest, Mr. Dalbec and his wife owned three businesses, including a medical spa.

Mr. Dalbec married his wife almost ten years ago and adopted her daughter. *Id* at 49. He is deeply committed to his wife and daughter and he "regrets every waking moment" that he put money before his family. *See* Exhibit A.

Mr. Dalbec submits five (5) letters of support for the Court to consider in determining its sentence in this case. Each letter gives the Court a more complete understanding of Mr. Dalbec. *See* Exhibits B-G. Mr. Dalbec has spent last fifteen (15) months in custody. He has utilized his time effectively, completing hundreds of classes in various disciplines and study areas.

1

Currently, Mr. Dalbec continues to work while in custody and pursue additional courses and certifications.

*Sentencing Request*

Based upon Mr. Dalbec's personal history and characteristics, his commitment to personal rehabilitation, his low likelihood of recidivism, and fundamental disagreements with the U.S. Sentencing Guidelines for the instant offense, Mr. Dalbec, pursuant to the plea agreement, requests a sentence of forty-two (42) months. Such a sentence would be "sufficient, but not greater than necessary" to achieve the legitimate purposes of sentencing. *See* 18 U.S.C. § 3553(a).

## I. THE LEGAL FRAMEWORK OF AN ADVISORY GUIDELINE RANGE

While this Court must still correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007), it may not treat that range as mandatory or presumptive, *Id*. at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009), but as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," *id*. at 49-50, and explain how the facts relate to the purposes of sentencing. *Id*. at 53-60; *see also Pepper v. United States,* 131 S. Ct. 1229, 1242-1243 (2011). The Court's "overarching" duty is to "impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id*. at 101; *Pepper*, 131 S. Ct. at 1242-43.

To ensure that the guidelines are truly advisory and constitutional, this Court has the authority to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory…, as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02

(internal punctuation omitted) (*citing Rita v. United States*, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations).

"It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify the crime and the punishment to ensue. *Koon v. United States*, 518 U.S. 81, 113 (1996). Permitting sentencing courts to consider the widest possible breadth of information about a defendant "ensures that the punishment will suit not merely the offense but the individual defendant." *Pepper*, 131 S. Ct. 1229, 1240 (2011) (citing *Wasman v. United States*, 468 U.S. 559, 564 (1984)).

In this regard, "the district court's job is not [even] to impose a reasonable sentence. Rather, a district court's mandate is to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of section 3553(a)(2)." *United States. v. Foreman*, 436 F.3d 638, 644, n.1 (6th Cir. 2006). Accordingly, "if a district court were explicitly to conclude that two sentences equally served the statutory purpose of § 3553, it could not, consistent with the parsimony clause, impose the higher." *United States v. Ministro-Tapia*, 470 F.3d 137 (2d Cir. 2006).

## II. THE UNITED STATES SENTENCING GUIDELINES

In accordance with the PSR in this matter, the parties agree that the following Sentencing Guidelines sections apply:

**2021 Guidelines**

USSG § 2C1.1(a)(2) – Base Offense Level………………………………………………............12

USSG § 2C1.1(b)(1) – More than one bribe..………………………..……………….+2

3

USSG § 2C1.1(b)(2) – Value more than $250,000, but less than $550,000..……………..……..+12

Subtotal……............26[1]

Acceptance of Responsibility USSG §3E1.1(a)…………………………………………………..-2

Acceptance of Responsibility USSG §3E1.1(b)………………………………………………….-1

**TOTAL OFFENSE LEVEL**………………………………………………………………………**23**

Mr. Dalbec has a criminal history score of four and a criminal history category of III for sentencing purposes. *See* PSR at ¶¶ 40-41. These calculations, with a total offense level of twenty-five (23), would result in an advisory Guidelines range for Mr. Dalbec of 57-71 months. *See* USSG Sentencing Table. However, a review of contemporary sentencing practices highlights the inherent flaws in these overly punitive guidelines.

**A. Widespread Disagreement with the Advisory Guidelines is Evidence that they are Flawed**

The current guidelines for bribery of a public official have received little support from the federal bench. In 2021, less than a quarter of the defendants sentenced under USSG § 2C1.1 received a within-guidelines sentence, and an even greater portion of defendants were sentenced below guidelines. *See* Sent'g Comm'n. *2021 Sourcebook of Federal Sentencing Statistics* at 91. Historically, over the previous seven years, over twice as many defendants receive below-guidelines sentences than receive within-guidelines sentences. *See* U.S. Sentencing Commission's Interactive Data Analyzer – 2C1.1 (2015-2021). As Courts have noted, "[I]t is difficult for a sentencing judge to place much stock in a guidelines range that does not provide realistic guidance," *United States v. Parris*, 573 F. Supp. 2d 744, 751 (E.D.N.Y. 2008)..

---

[1] The PSR added a two (2) level enhancement for Mr. Dalbec's alleged aggravating role in the conspiracy under USSG § 3B1.1(c). Mr. Dalbec disputes this characterization and the applicability of the enhancement. The parties agreed that no such enhancement would be part of the recommended guideline calculation.

Such a vast and consistent discrepancy between the guidelines and the actual sentence imposed, are a clear indicator that the guidelines under USSG § 2C1.1 do not represent the consensus of the judiciary. More often than not, courts impose a below-guidelines sentence rather than a within-guidelines sentence, reflecting the guidelines' inconsistency with and distinction from the statutory purpose of § 3553.

### III. 18 U.S.C. § 3553(a) FACTORS

#### A. The Nature and Circumstances of the Offense

Mr. Dalbec's involvement in the instant offense is extraordinarily regrettable. As he tells the Court, "I am so sorry, and I take full responsibility for my actions." *See* Exhibit A. Mr. Dalbec makes no excuses or justification for his behavior and he "realize[s] all the pain [he] ha[s] caused to [him]self, [his] family, and the government for what [he has] done. *Id*. He is doing everything he can to ensure he "will be a productive member of society" upon his release from custody. *Id*.

Mr. Dalbec's letter is written by a man utterly humbled and broken by his actions. *Id*. He has spent fifteen (15) months in custody, and has used that time to reflect deeply on "the decisions [he has] made and how they have affected" those closest to him. *Id*. Yet, no matter how ashamed he is by his choices, Mr. Dalbec refuses to be defeated or to wallow in self-pity or hopelessness. *Id.* Instead, Mr. Dalbec has taken advantage of the resources available to him and done everything he can to repair trust with his family.

During his time in custody, Mr. Dalbec has done everything he can to stay busy and be as productive with his time as possible. He has maintained employment and incurred no infractions of any kind. *See* PSR at ¶ 3. He has also obtained over three hundred (300) certificates in various educational and vocational disciplines. *See* Exhibit H. In particular, Mr. Dalbec has participated

5

in several programs focusing on rehabilitation and lifestyle management that have helped him to gain a better understanding of himself, his decision-making process, and the impact his choices have had on those around him. *See* Exhibit A.

Mr. Dalbec's life will be forever changed as a result of this offense and conviction. Despite the personal and professional upheaval that accompanied his arrest, Mr. Dalbec has made a commitment to better understand himself and his choices, and to continue forward, for himself, his wife, and their daughter. He understands the severity of his actions, has taken actionable steps to ensure he does not recidivate, and is hopeful for a better future.

### B. Mr. Dalbec's History and Characteristics

Mr. Dalbec is beloved by his family and friends, as evidenced by the letters of support submitted on his behalf. *See* Exhibits B-G. The letters paint a picture of a man who is respected, loved, and admired for his dedication to his family and loved ones. *Id.*

Roya Khan, Mr. Dalbec's sister-in-law, has known Ryan as "good friend, brother-in-law, and a good father to his daughter." *See* Exhibit B. She has always known Mr. Dalbec to be an "upright character in the community." *Id.* She was especially struck by his support during a time of personal struggle when she had lost her job. *Id*. She has seen Mr. Dalbec's remorse first-hand and is confident he "will emerge a better person." *Id*.

Colonel Michael R. Janay is a retired United States Marine Corps officer who has known Mr. Dalbec for nearly seven years. *See* Exhibit C. He has always known Mr. Dalbec to be a good man and a "good father to his daughter." *Id*. He recalls Mr. Dalbec taken his daughter to gymnastics class and working hard to ensure his daughter could pursue her dreams that Mr. Dalbec's wife was unable to have when she was growing up in Afghanistan. *Id*. Colonel Janay

believes Mr. Dalbec has "learned [a] valuable lesson for life and is a better person for it." *Id*. Mr. Dalbec "will use this opportunity and will become a productive member of our society." *Id*.

Dr. Shahla Rashid is a professor and chancellor at Maryam University in Kabul, Afghanistan, and she is Mr. Dalbec's mother-in-law. *See* Exhibit D. Dr. Rashid admires Mr. Dalbec for being a "good, caring, and kind father… someone [his] daughter can never replace." *Id*. She knows that Mr. Dalbec has "learned his lesson" and will "try his best to prove himself to his family and community" going forward. *Id*.

Echoing the sentiment of all who know him, Shabnam Nadem recognizes Mr. Dalbec to be an "excellent father." *See* Exhibit E. Mr. Dalbec has "lost everything with this incident" but Mr. Nadem is sure that Mr. Dalbec has "learned a valuable lesson the hard way in life." *Id*. His daughter "deserve[s]" to have a "loving father" in her life and Mr. Nadem "sincere[ly] hopes the Court will take this into consideration at sentencing. *Id*.

Perhaps Mr. Dalbec's true character is best indicated by Wesal, Mr. Dalbec's nephew, who goes by the nickname "Tyrone." *See* Exhibit F. Tyrone is in eighth grade and considers his "Uncle Ryan [to be] one of the greatest people [he] has ever known." *Id*. Mr. Dalbec used to take Tyrone to boxing classes and the library and even taught him how to play basketball. *See id.* Mr. Dalbec used to "spend more time with" Tyrone than Tyrone's actual father, who only visited Tyrone and his brother four days each month. *Id*. Mr. Dalbec was with them "every day." *Id*. Since his arrest, Tyrone's whole family is sad. *See id*. Tyrone feels like he "lost his father" and begs the court to "return him back to us." *Id*.

Mr. Dalbec's closest professional relationship is with David Gutterud, Director of the University of North Dakota's Environmental Training Institute and the President of Novus Facility & Response Management, Inc. *See* Exhibit G. Mr. Gutterud first met and began working

with Mr. Dalbec in 2016. *Id*. Over the next five years, Mr. Gutterud worked on over ninety (90) projects with Mr. Dalbec, of all different types and scopes. *Id*. Mr. Gutterud was "always impressed with Mr. Dalbec's work ethic and drive to succeed." *Id*. He was even more impressed by Mr. Dalbec's commitment to his employees' professional and personal well-being. *See id.* Mr. Gutterud "saw many occasions where Mr. Dalbec offered employment to friends and family members of friends who were struggling," and Mr. Dalbec "frequently provided meals, monetary advances, and even housing assistance to employees who were short on funds." *Id*.

During their time working together, Mr. Gutterud got to know Mr. Dalbec and his family, and they became personal friends as well as professional colleagues. *See id*. Mr. Gutterud was "surprised" when he learned of the allegations against Mr. Dalbec. In fact, Mr. Gutterud had worked with Mr. Dalbec on the project that was implicated in this case. *See id*. Mr. Gutterud never observed any impact or indication of Mr. Dalbec's conduct during Mr. Gutterud's extensive time on site and involved in the project. *Id*. As a testament to the trust and friendship he has developed with Mr. Dalbec, Mr. Gutterud unequivocally vouches for Ryan Dalbec as a "good contractor, a good employer and a good man." *Id*. Mr. Gutterud "would not hesitate" to work with Mr. Dalbec in the future. *Id*. To those who know him best, the conduct that led to Mr. Dalbec's conviction is in striking contrast to who he is and how he lives his life.

GUTTERUD    Mr. Dalbec is a generous, caring, and involved father. His family and colleagues admire and respect him and are shocked at his involvement in this crime and have every confidence that he will never again put himself or his family in this position.

### C.  Mr. Dalbec Poses Little or No Risk of Recidivism

Of all the purposes of sentencing, the need to protect the public from further crimes of the defendant is one of great practical concern and is the most capable of being measured.

8

Fortunately, Mr. Dalbec does not fit the archetype of a person who will commit new criminal offenses or recidivate. And because of the reinvigorated role of the judiciary in sentencing, judges can now impose sentences that take such research into consideration to more effectively impose sufficient, but not greater than necessary, sentences.

The judiciary's bolstered role is especially important given the Commission's own findings that "there is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected as the Guidelines' offense level has long been recognized as not intended or designed to predict recidivism." *U.S. Sentencing Comm'n, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* at 15 (May 2004) (hereinafter *Measuring Recidivism*). Thus, the guidelines are at odds with 18 U.S.C. § 3553(a)(2)(C). Accordingly, *Booker* has freed the judiciary to remedy this inconsistency.

In addition to what has already been described about Mr. Dalbec's character demonstrating his ability to reform, the Commission has also objectively quantified his low likelihood of recidivism. For example, the Sentencing Commission's study confirms that recidivism rates decline relatively consistently as age increases. *See Measuring Recidivism* at 12. More specifically individuals like Mr. Dalbec, who is 44 years old, have a recidivism rate of less than 13%. *Id.* at 28. It is unfortunate that the Guidelines' offense levels do not take into consideration such data. This data exists yet is not utilized to inform the Commission's rulemaking.

Mr. Dalbec has never before been involved in any corrupt business practices or unlawful financial conduct. While Mr. Dalbec will never again put himself or his family at risk by such

9

choices, he also recognizes that his career as a contractor is effectively over. He has spent fifteen months contemplating and experiencing the result of his choices and he will never make the same mistake again.

### D. The Need to Avoid Unwarranted Sentencing Disparities

An additional factor to consider is the "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

A review of similar cases illustrates that the requested sentence would not represent an overly lenient sentence.

In *United States v. Donald Garner and Richard Vaughan*, 3:19-cr-00120-SLG each defendant also faced a guideline range of at least 57-71 months[2] for their scheme to defraud the VA. Unlike the instant case, the loss to the government in each of these cases was significant, totaling $347,000. Each received a below-guideline sentence of a year and a day, and $347,000 in joint and several restitution.

In *United States v. Bilal Kevin Abdullah*, 5:13-cr-00037-TBR-1 (W. Ky), the defendant had accepted bribes to facilitate the repeated theft of fuel from an operating base in Afghanistan, with a loss to the government of $466,250. Abdullah's guideline range was 70-87 months. He was sentenced to a year and a day followed by two years of supervised release, plus $466,250 in restitution.

In *United States v. Brian Lowell Nash, II*, 4:21-cr-00011-RRB-3 (D. Alaska), Mr. Dalbec's co-defendant, who faced an identical 57-71 month guideline range, was recently

---

[2] In fact, one co-defendant, Richard Vaughn, actually faced a higher guideline range before receiving a COVID-related downward variance.

10

sentenced to thirty months of imprisonment. Mr. Dalbec and Mr. Nash, a contracting specialist in the United States Air Force, were effectively co-equal participants in the offense. Each was on their respective side of the illicit transactions and there is no factual basis for a meaningful sentencing disparity between the co-defendants.

### E. Mr. Dalbec's Public Demise is Adequate Deterrence to Others

Section 3553(a)(2)(B) requires the Court to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct." Arguably, the government already substantially achieved the maximal deterrent effect of Mr. Dalbec's offense simply by charging and convicting him. As a result of his arrest and imprisonment, Mr. Dalbec has lost his reputation and his very successful career in the construction industry has ended. His name will forever be associated with this criminal case. He has had to sell off most of his assets and other valuable property to pay off his debts, including jewelry, business assets, and his vehicle. *See* PSR at 23. Mr. Dalbec has also sold all his property, except for the home he owns with his wife in Arizona, which is currently on the market. *Id.*

Mr. Dalbec's name and the substance of his offense will be discussed in numerous conversations and settings among family, friends, and the community for years to come, a regretful reality from which he simply cannot escape. In short, Mr. Dalbec's public demise sends a strong message to anyone foolish enough to engage in similar offenses.

                                                Respectfully submitted,

                                                _____/s/_____
                                                David Benowitz
                                                DC Bar # 451557
                                                *Counsel for Ryan Dalbec*
                                                Price Benowitz LLP
                                                409 Seventh Street, NW, Suite 200
                                                Washington, DC  20004
                                                (202) 271-5249

David@PriceBenowitz.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of November 2022, I caused a true and correct copy of the foregoing Defendant's Memorandum In Aid Of Sentencing to be delivered via CM/ECF to all parties in this matter.

_____/s/_____
David Benowitz